Good morning. Our first case this morning is Mathis v. Metropolitan Life Insurance 20-2719. And Mr. Hodes and Mr. Saint, you are splitting time on this, is that correct? That is correct, Your Honor. Mr. Hodes, are you going first? Or Mr. Saint? It's Mr. Hodes will go first. Okay, and you've reserved four minutes. No, Your Honor, we changed it to five last night, but okay, are we are we ready to go? We're ready to go. All right. Good morning, Your Honors, and may it please the court. In its response, MetLife said very little about how this breach of contracts who could possibly be ripe for adjudication. And that is not surprising, given that by its own account, Dr. Mathis had made no claim. MetLife had made no investigation. MetLife had made note, had not denied the claim and was not even aware that Dr. Mathis was seeking benefits after September 2017. Instead, MetLife merely repeated the district court's conclusory statement that there was a concrete dispute and that the resolution of that dispute did not depend upon any future uncertain events. That is wrong, however, because Dr. The whole point is Dr. Mathis might or might not in the future actually file a claim. And if he did file a claim, then MetLife might or might not deny the claim. And the lack of all of that, that is the very definition of being unripe. Now, it's true, MetLife cited a few cases for the proposition that a suit for a breach of an insurance contract can be ripe, even in the absence of a denial by the carrier. But those were all either declaratory judgment cases, cases for rescission, repudiation, cases in which a long-running dispute was found to be a constructive denial. That's the Ware case that they cited, for example. But there is no- Mr. Hodes, your client sued MetLife here for breach of contract. And MetLife's defense is that your client failed to comply with a condition precedent. It seems like you're trying to flip a defense into a ripeness argument. Where would you draw the line? Under your argument, your client could keep suing and suing and suing and say, well, oh, this is only for a two-month period. So you can't go beyond the two-month. And then if you lose that, sue again. What's the dividing principle? Oh, no, I think it's the opposite, Your Honor. I think that if there was a series of- if claims had been filed and then a short period passed and there was no payment or there was a denial, they could sue for that period. And if it happened again, this is the opposite situation in which at the time that suit had been filed, it is now conceded. It was a mistake when it was filed and MetLife correctly picked up on it and said, wait, you can't sue us because this case isn't ripe. That was their motion. This case is not ripe. It's the equivalent of an exhaustion of remedies kind of thing. But it wasn't that- it was that part of the case was ripe. So it doesn't seem that you- right, that you can sue for part of a breach of contract, have MetLife assert a defense, and then try to flip that defense to be a ripeness. No, I don't think so, Your Honor. Because in the parts that clearly were ripe, clearly were ripe, the district court denied summary judgment and did not deny and did not deal one way or the other, did not dismiss those cases, did not grant summary judgment. In the ones post-September of 2017, where it is now, a long time later, it is agreed that at the time suit was filed, there had been no notice, no claim, no nothing, which was a mistake. Well, I don't think that was agreed a long time later. That was the defense that was brought up from MetLife from the beginning. That's right. What I meant was, Your Honor, that it was only agreed between the parties and the court so ruled at the very end of the case. Whereas if the court, the district court, had picked up on, and frankly, if the plaintiff had picked up on the lack of ripeness defense, which MetLife had interposed on day one, on the same day that it moved for 12 v. 6, which later became a summary judgment, it moved to dismiss for lack of ripeness. That motion was correct, should have been granted, and the fact that it was not granted was ignored. Mr. Hodes, you are now into Mr. Saint's time, so your five minutes are up. Mr. Saint, we'll switch to you if you want to pick up. Yes, thank you. I'm going to pick up, Your Honor. Mr. Saint, let me just try and get something clear here, okay? You argued in this lawsuit that you had satisfied the proof of loss requirement or that MetLife had waived it. And now you claim that the court in rejecting that claim must dismiss without prejudice to allow you to fulfill that requirement. Aren't you essentially arguing that the court has to give you a second opportunity to litigate the same claim because you did not do everything you could have done the first time to present the best chance of success? If you chose to forego that opportunity to file a proof of loss prior to filing suit, why shouldn't you be held to that choice now? I am flummoxed here. Your Honor, I would like to address that squarely. Because this court was sitting in diversity applying Alabama law, the substantive law of Alabama, which would be subject matter jurisdiction, would apply here. And we cited the Vardaman case and some other cases, and those cases stand squarely for the proposition that if a suit is filed prior to submitting a proof of loss, they're premature. But Vardaman distinguishes between policies that predicate liability on the existence of a disability only versus those that predicate liability upon disability and proof of such a disability. So that doesn't answer Judge Rovner's question. So to answer that more specifically, the policy itself has a legal actions clause that says no legal action may be brought until 60 days after written proof of loss has been provided. Therefore, it is a condition to actually bring suit. It's not a condition to liability. And our position is that there had been proofs of loss submitted through September 30, 2017.  It also has a provision that says that written proof of loss that you're referring to has to be sent within 90 days after the end of each monthly period for which you claim benefits. And that wasn't done here. Your Honor, and we also raised the issue of the statutory proof of loss provision in our briefs. And under the Alabama proof of loss provision, when you apply the majority view or interpretation of that same language, that means that if it's a continuous disability, the proof of loss is not required until sometime at the end of the disability. Look, as to the argument that you still could file proof of loss under Alabama law, why should we even reach that issue, given that the defect in your case, to me at any rate, as I sit here right now, is not that proof of loss was not timely submitted, but that it was not submitted at all. That is correct. And because it was not submitted at all, any claim after the time after September 30, 2017 would be premature. We wouldn't even have a right to bring a lawsuit. And if we don't have a right to bring a lawsuit, that essentially means that the court would not have subject matter jurisdiction to hear those claims. You did bring a lawsuit, and you sued for breach of contract for this broader period. And now you're trying to use the fact that you didn't comply with the terms of the contract to get around that life's defense. Well, going back to the Vardaman case. Vardaman does not help you. Vardaman had different policy language than the policy language at issue here. So I respectfully am not persuaded by your Vardaman argument. Well, then let me move on to the statutory proofs of loss, because in this particular case, the Alabama statutory proof of loss was a mandatory proof of loss. And all the courts, the majority of courts that have looked at that, have interpreted that to mean that Dr. Mathis, because he had a continuous disability, his time for actually filing the proofs of loss is not until the end of his disability. The problem here, forgive me, and help me, the problem here is not the timeliness of the proof of loss, but the complete failure to provide it. It doesn't matter whether or not Mathis still could have submitted proof of loss under Alabama law. He chose to file suit and to argue that he had fully complied with his contractual obligations at a time at which he had failed to fulfill the obligation to submit proof of loss. And to me, that seems to doom his claim. It's immaterial whether he could have pursued his claim successfully if he had chosen a different course of action. I just, I'm having such difficulty. I really wish I weren't. Well, and I appreciate your comments, but in a typical case, say that there were five months of proof of loss that had been filed, and then a lawsuit was brought. What about each and every one of the months thereafter? Does the court have jurisdiction to decide all the proofs of loss after the time that the lawsuit has been filed? And in the court's decision, they say they enter summary judgment on every month after September 30, 2017. Does that mean forever and ever and ever? Mr. St, why didn't your client submit the proofs of loss, especially when it was brought to his attention? I'm sorry, I didn't hear that question. I'm sorry. Why didn't your client submit proofs of loss here, especially when it was brought to his attention? Well, at some point in time, he has, but it's just not been my practice that after you file a lawsuit, you continue to file proofs of loss and then amend your pleadings to add those additional months. Even if it's part of the contract? Yes, because then you'd constantly be amending your complaint month after month after month to join additional claims. You wouldn't have to amend the complaint. You'd just send a proof of loss over. Exactly. And also, there was... It's sort of the same way that, like, someone who's on disability and goes to work has to send proof that she is still working or she has stopped working on a monthly basis. I mean, it's sort of like, to me, it's sort of like that. Again, at what point in time does the... During the course of a case, once you file the case, do you keep filing proofs of loss and then amending, amending, amending your complaint? It seems like it's a practical problem. Mr. Saint, you're... Let's assume what you're saying is true. How do you explain here that you did not file suit until June of 2018, yet your client stopped filing proofs of loss and said in August he wasn't going to file anymore of 2017? So months before the lawsuit was even filed, no proofs of loss were filed. Well, again, we believe that until the proof of loss has been filed, there is not a right to bring a suit for a period after September 30. And that doesn't go to liability. It goes to whether the condition to bring the suit has been filed. And so at the time we brought the suit, the only thing that was at issue were the claims that had been submitted through September 30, 2017. If I could move on to, very quickly, to choice of law, this is one of those rare cases. And the reason why it's one of those rare cases is that the acts giving rise to liability occurred in Indiana. The wrong policy was procured by source brokerage in Indiana, and it was sold in 2006. The harm did not arise until sometime in 2017. And at the time that the harm arose, that was a 10-year lapse from the time that the facts giving rise to the liability arose. Matthew presided in Alabama when he applied for the policy. It was to cover income lost from his work as a doctor who was licensed in Alabama and practicing in Alabama. He relied upon Moore's representations while he was located in Alabama. He lived in Alabama when the policy was issued. The policy was delivered to him in Alabama. He suffered economic losses while in Alabama. There you go. There is no dispute that the damage occurred in Alabama. The question is, are the facts that the court set forth, do those have little connection or more than little connection? And our cause of action is for negligent procurement. So the fact that he obtained the policy in Alabama, the application was submitted in Alabama, he was licensed to practice medicine in Alabama. All of those have nothing to do with the negligent procurement. And let me illustrate that. You brought a suit for breach of contract. Those are directly relevant to the breach of contract. Well, but this is on the negligence theory. Just so you know, Mr. Saint, you are into your rebuttal time. Okay. Those are on the negligence theory. And so in order to plead negligent procurement, we don't have to allege any of these facts. In order to prove negligent procurement, we don't have to prove any of these facts. So therefore, it is our position that these facts have little connection to the cause of action, which is negligent procurement. And the court also said that Mathis presumably relied upon Mr. Moore's representations. Reliance is not an element of negligent procurement. And again, it's looking at the connection Alabama had to the cause of action. All the facts giving rise to the negligent procurement happened in Indiana, and it was initiated by source brokerage who had no contact with Alabama. It's an Indiana licensed broker. They got the wrong policy. They didn't. They had absolutely no connection with the state of Alabama. So our position is that there was little connection. And the facts the court set forth, those are little connection to the actual cause of action, which is the negligent procurement. Thank you. Thank you, Mr. Saint. Thank you. Ms. Herring, it looks like the three of you are dividing it, and you're taking ten minutes. Is that correct? That is correct, Your Honor. Okay. Whenever you're ready, you may proceed. Good morning. May it please the court. Jacqueline Herring on behalf of Metropolitan Life Insurance Company. With respect to MetLife, this case presents a very straightforward insurance breach of contract dispute. Dr. Mathis alleged that payment was owed under the contract. MetLife denied that payment was owed under the contract. When Dr. Mathis failed to establish that he complied with his own contractual obligations, which is a required element of his case, the district court correctly entered summary judgment on his breach of contract claim. Dr. Mathis is now trying to, on appeal, transform his failure of proof into a failure of jurisdiction. And it was never conceded by Dr. Mathis at any time in the district court that he had failed to comply with the contract. He argued on summary judgment that MetLife waived enforcement of that provision, that he was not required to comply with the proof of loss in order to proceed with his breach of contract claim. So essentially what Dr. Mathis is arguing to the court is when MetLife succeeded in its defenses, that means there's no longer jurisdiction. There's no question that if Dr. Mathis had succeeded in arguing that MetLife waived proof of loss or that he in fact complied with the proof of loss, there would be no question that the case was an actual case in controversy that is a ripe case in controversy. The only reason he is now trying to make this argument is that he failed in his burden of proof. But that doesn't defeat the district court's jurisdiction to enter judgment in favor of MetLife. And Alabama courts are unanimous in holding that the consequence of failure to submit the requisite proof of loss means that you lose on summary judgment. It results in summary judgment for the insurer. Alabama courts do not dismiss cases for lack of jurisdiction, for lack of ripeness, for any other reason. I thought it was your position that we need not reach the issue at all as to how Alabama law would interpret the 90-day provision. Because no proof of loss was ever submitted and therefore the timeliness of proof of loss is not an issue in this case. And that's exactly right, Your Honor. And if I said something that suggested otherwise, I apologize for that. The point was that when you fail to comply with proof of loss under Alabama law, the result is summary judgment for the insurer. And the Alabama Supreme Court could not be more clear that that's how the contract is addressed. It is a contract defense. And a successful contract defense doesn't result in the district court losing jurisdiction. Otherwise, a defendant can never prevail, and the plaintiff is always setting up a heads-I-win, tails-you-lose. Because if I prevail, there's jurisdiction to award me contractual benefits. But if I lose, well, then that just means I get to go and do over again and comply with the contract. And no breach of contract claims are ever litigated in that manner. When a party fails to comply and cannot establish a genuine issue of fact for trial that they complied with the contract, cases aren't dismissed for lack of jurisdiction, so they can go try to comply with the contract or drum up more evidence to prove that they complied with the contract or that there was a waiver of a contract term, and then come back in and sue again. That's not how federal jurisdiction works. Federal jurisdiction isn't defeated because MetLife successfully pursued a contract defense to Dr. Mathis' breach of contract claim. And this was clearly an actual controversy between adverse parties. And that's the standard for ripeness for federal jurisdiction. Dr. Mathis specifically alleged that he performed all of his contractual obligations. MetLife refuted that. But, again, that is a typical breach of contract scenario. The fact that he was unable to prove that, or in his words now, I was mistaken, that doesn't mean that the court loses jurisdiction over the right case he alleged. Or, again, otherwise the result is always a successful defense means the plaintiff gets another bite at the apple. I take it that it's your position that it wouldn't just be one bite at the apple. It could go on infinitum. It could. And, you know, in this case in particular, you know, Dr. Mathis was very, very adamant that he had complied with proof of loss. And MetLife said, no, you have not. And that is sort of the very definition of an actual controversy between adverse parties. The district court absolutely had jurisdiction to resolve that issue. The fact that it was resolved in MetLife's favor and that Dr. Mathis was unable to establish that he had complied with the contract doesn't mean that the court suddenly, that jurisdiction suddenly dissipates. You know, for two years, Dr. Mathis absolutely insisted that MetLife had waived that provision of the contract, that he had complied with that provision of the contract. You know, at that point, the court couldn't say, well, then I don't have jurisdiction. You know, that doesn't even make sense. And you don't evaluate jurisdiction based on the end result. Jurisdiction is based on is there an actual case or controversy alleged. One was alleged. A failure to prove it doesn't mean that jurisdiction goes away. And in this case, what the district court did was exactly correct. There are four required elements for breach of contract. Dr. Mathis had no evidence whatsoever that he complied with his requirements under the contract. And therefore, there was no genuine issue for trial. The district court correctly entered summary judgment for MetLife, and that judgment should be affirmed. Thank you. My co-defendants can have the remainder of the time. Okay. Thank you, Ms. Herring. Mr. Beaman. Thank you, Judge. Alex Beaman on behalf of Source Brokerage. Thank you, Ms. Herring, for the additional time, if we need to use it. Judge Staney, I would like to address the question you presented to Mr. Saint, and that was asking him whether he brought a breach of contract claim regarding the negligent procurement. Under Indiana law, you can certainly bring failure to procure can be both negligence and breach of contract. The amended complaint, the operative complaint in this case, which is Record 17, it was only brought in this case as a negligence claim. So we're dealing with the choice of law in a tort-related context, not a breach of contract-related context. I did want to clarify that. As Mr. Saint started to argue, I think everyone agrees that the step in this process that we're trying to determine right now is whether Alabama bore little connection to the underlying negligent procurement claim. Now, I think the problem is Mr. Mathis's argument quickly starts delving into pointing out that the negligent acts occurred in Indiana versus Alabama. And as an initial matter, the step that we are in is merely looking at the connections that Alabama has with the underlying negligent procurement claim. And it is irrelevant that any of the connections may come from Indiana. I disagree with the premise that all the connections of negligent acts would come from Indiana, but those are all relevant at this stage in litigation. Did the representations as to the policy occur in Indiana? Yeah, I think obviously this was dismissed on a motion to dismiss stage. I think the reasonable inference from the pleadings, which you have to favor the plaintiff at this time, I think you can assume that the representations, which were directed though to Alabama, would have also occurred in Indiana. How does that impact this? I don't think it impacts it at all because I think those facts are irrelevant at this stage again. Again, when we're focusing on determining what connections are important, we're evaluating what the essential elements are of the whole cause of action and not necessarily those that might be the hotly contested issue by any one party. Yeah, but here's what would be helpful, I think, is if you would explain what you believe, what part of the wrong is most clearly tied to Alabama. Sure. So I think the question is, in a negligent procurement case, a negligent procurement case, just like any other type of negligence case, has elements. Duty, breach, approximate cause, and you have damages. I think, unerringly, the damages which are approximately caused by this negligent act, there's obviously no claim. And in this case, those damages and the approximate causation to the negligent procurement all occur in Alabama. Employment, income, licensure, his treatment, that was all stuff that occurred in Alabama. And due to actually the kind of the unique procedural posture of this, that we had a case go on with MetLife and we were dismissed kind of on the motion to dismiss stage, I think that's actually, it's borne out a little bit already in the designated evidence in the MetLife case. I mean, in the record, there's designated evidence of his inability to perform complex surgeries as an orthopedic surgeon occurred at the Alabama Bone and Joint Clinic. He subsequently resigned from the clinic and then began working at an Ortho Sports Associates. This gets exactly to proving the disability, which is proving your entitlement to the coverage that you claim should have been provided in the first place. He underwent treatment in Alabama thereafter, you know, financial documentations regarding what he could and couldn't do, which would have been a basis for the occupational, the coverage and the damages and the failure to procure case. All of this occurred in Alabama. And again, this is not, this is not my own anticipating proof to be, this is actually stuff that's already in there. But since my time's running out, I just ask the court that they affirm the district court's decision in dismissing the case. Thank you for your time. Thank you, Mr. Beaman. Ms. Fickle, you have five minutes plus a little extra from Ms. Haring if you need it. Thank you, Your Honor. Good morning. May it please the court, Connie Fickle with Louis-Brisbois on behalf of Appellee Lee Moore. I'd like to start with, I think, where the justice left off and the question about what conduct occurred in Indiana here. And I think that really strikes to the heart of appellant's position. Appellant's position appears to be that the negligence, and I'll use air quotes for that, I think in our brief we used parentheticals, occurred in Indiana. Well, that's not the requirement. In order to determine what law applies, we have to look at the last overt act that formed the basis of that, the last act, or where the final element, rather, of that tort took place. So setting aside for a second that my client was in Indiana when he made the phone call or got on the Internet to place a policy, where did the last element of the tort of negligent procurement occur? Well, the last element is damages, and we just heard appellant's counsel admit freely that there's no dispute that the damage occurred in Alabama. That answers the first prong of the analysis. I would also emphasize that not only the last act occurred in Alabama, but almost all of the other acts occurred in Alabama. And when I circle back around to breach, that's a really interesting argument, and I think it's analogous to the incidental contact with other states, whether it's Indiana or Kentucky, in the Hubbard and Simon case. So appellant's counsel argued that reliance isn't an element of negligent procurement. That is true. However, the actual reliance that occurred, what that is in the negligent procurement context, that's causation. If appellant did not rely upon what my client allegedly said, he would not have purchased the policy. That's the but-for element. So now we have damage occurring in Alabama. We have causation occurring in Alabama, and also duty. The duty to procure the policy does not occur until it is requested. It was requested by whom? By appellant. Where was appellant? Appellant was in Alabama. So now we have duty, causation, damages, all arising in Alabama. So if we go to the first part of the test, the last act occurred in Alabama. So until and unless the contact with Alabama and the conduct occurring in Alabama is not significant to this action, to the cause of action, then Alabama law applies. So appellant's argument appears to be that my client procured the policy. This is done either over the phone or over the Internet these days, and he was in Indiana. And in my view, and I think it's the correct view, that could have occurred anywhere. My client could have called to place that policy while he was on a layover at LAX. Would California law apply? He could have logged on to his computer from France. Would we be governed, you know, would we be in the French courts? Where you are, especially these days with technology, which is probably best exemplified by the fact that I am arguing before the Seventh Circuit. I am not physically present in front of you. I am in California. But I think it's safe to say that I'm not arguing in a California court right now. I'm conducting my business right now before the Seventh Circuit. And just like I'm conducting my business before the Seventh Circuit right now, my client was conducting business and purposely directing actions in Alabama under an Alabama insurance license. And he just happened to be on the phone, on the Internet, logged in, or connected when he was physically located in Indiana. Just like the plane in the Simon case happened to crash in Kentucky. Well, all of the other ties were to other states. My client could have, like I said, he could have been anywhere in the world on that phone, but he just happened to be there. And it's the same thing with the Hubbard case. The accident just happened to be in Illinois, but every other contact was with the state of Indiana, and that's why Indiana law applied here. Here we have every element of this tort occurring in Alabama. Arguably, we could say that the breach occurred in Alabama because my client was conducting business in Alabama toward an Alabama resident. I'm sorry to interrupt. You are into Ms. Haring's time. We'll put about two more minutes on the clock over from this hearing. I really think just that sums up the argument. I think any incidental conduct here, if there is any, would have been the call being placed from Indiana. And what we have is we have. At least three out of the four elements occurring in Alabama, and that's why Alabama choice of Washington. Thank you, Mr. Saint. You only had a little bit of time left. We'll give you a minute for rebuttal. OK, thank you. First of all, I'd like to just briefly talk about reliance. Reliance is not an element of negligent procurement. The policy, the wrong policy based upon the amended complaint that was procured by source brokerage and Indiana broker in Indiana under under the law of Indiana. You have a you have a source brokerages who all of their conduct in obtaining the wrong policy occurred in the state of Indiana. And so no. So how could Alabama law apply to source brokerage who had no connection to the state of Alabama? And because Indiana is starting in the Hubbard case and through, Simon has rejected the theory of deficit cage. Therefore, Indiana law has to apply to both Mr. Moore and to source brokerage. Thank you. Thank you, Mr. Saint. This case will be taken under advisement. Thanks to all counsel. Thank you. Thank you very much. Thank you. All. Thank you. Thank you. Thank you. Thank you.